THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHNNIE MILLER, Defendant-Appellant.

Third District   No. 76-394

Opinion filed December 12, 1977.

Robert Agostinelli and Verlin R. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Johnnie Miller appeals from a conviction of the offense of armed violence in the Circuit Court of Will County, pursuant to which he was sentenced to a term of not less than one year nor more than three years. The only issue raised on appeal is whether the court erred in denying the defendant the opportunity to call a police officer, who was not a witness to any of the events involved in the case, but who simply headed an investigation into police conduct at the time of the incident.

In the trial of the defendant on the charge of armed violence, nine witnesses testified concerning events on July 30, 1975. Four witnesses who testified for the State were police officers Snyder, Farago, Silich and Odenthal. The police department in Joliet had received a telephone call advising that defendant Miller, who was named in a felony warrant, could be found at 808 Cardinal Lane in Joliet. The officers went to that address for the purpose of serving the arrest warrant. Each of the officers was armed with a shotgun and when they arrived at the apartment complex at Cardinal Lane, the officers surrounded the building, with officers Snyder and Odenthal, in front, and Farago and Silich in the rear. Officer Snyder saw defendant Miller appear briefly at a front window and shortly thereafter heard Farago shout that Miller was coming out the rear of the building. Snyder ran around to the rear of the building and saw Miller outside the rear of the apartment complex with officers Farago and Silich

in pursuit. Snyder identified Miller and shouted that Miller had a gun. The officer heard a number of cracking sounds followed by shotgun blasts. Miller had run out from between the buildings on Cardinal Lane and was running down the street. Defendant fired a shot in Snyder's direction shortly after coming onto Cardinal Lane, the officer testified, and officers Farago and Odenthal fired their shotguns at Miller. Miller disappeared from sight after running down Cardinal Lane and between two buildings and in the course of the chase Snyder testified that he had seen a black or blue gun in defendant's right hand on at least three occasions. No gun was ever found.

Officer Silich, a young officer serving a probationary period at the time, saw defendant coming out of the second story window and also stated that he appeared to have a blue steel revolver tucked in his pants. He stated that Miller was firing his gun when jumping out the window and he thought he heard shots being fired by Miller in the direction of Officer Farago. Silich chased defendant between the two buildings and testified that defendant turned and from a distance of 15 to 20 feet pointed a gun at Silich. The officer immediately fired his shotgun, tripping in the process. Silich thereafter heard a number of shotgun blasts and one more pistol shot.

Five witnesses testified for the defense. These people lived in the neighborhood of the apartment complex from which Miller left. These witnesses all testified that they saw no gun in Miller's hand or his pants.

It appeared also that a woman who was sitting in her home, was hit by fragments from a shotgun blast. The circumstance that this woman was struck by the shotgun blast caused a great deal of friction between the residents of the apartment complex and the police force. This situation came to the attention of the trial court outside of the presence of the jury and an investigation was actually demanded by a black minister in the area as to excessive use of force by the police in the incident.

Defense attempted to call Officer Widlowski, an officer who began an investigation into the shooting of the woman in the apartment complex. The court refused to permit the defendant to call Officer Widlowski on the ground that the evidence was not relevant to the issue before the court which was to determine whether or not defendant had a gun with him at the time of the incident.

While only two of the four police officers specifically put a gun in defendant's hands by their testimony, and while the five witnesses located in the area testified that they did not see such a gun in possession of defendant, the jury apparently believed the police officers and as a result the defendant was found guilty of the crime of armed violence.

On appeal in this court, defendant contends that the court erred by denying defendant the opportunity to call Officer Widlowski since the officer, in detailing an investigation into police conduct on July 30, "would

have suggested a motive for the police officers' testifying as they did." Defendant's claim of error is that the court was wrong in finding that defendant sought to go into collateral matters of which he was uncertain where he alleges the purpose of the evidence was to challenge credibility of the witnesses for the State.

■■ Before evidence is admissible in court, it must be both relevant and material to the issue to be decided. (*People ex rel. Noren v. Dempsey* (1957), 10 Ill. 2d 288, 139 N.E.2d 780.) Excluded evidence here, so far as the record discloses, was not shown to be relevant. The evidence simply would show that in the course of the incident a person was injured, allegedly by shotgun pellets fired from a shotgun held by a police officer. The defendant wanted to demonstrate that the injuries were caused by pellets discharged from a shotgun rather than by projectiles discharged from a pistol. It was further stated by defense counsel, that he wanted the evidence to show that the scene was not created by the defendant. In response to this, the trial court stated that there was no evidence that defendant caused the scene and that he was charged with assaulting a police officer, and that was the factual issue before the court.

In the trial of the case, defendant did not state he was seeking to introduce evidence solely to impeach the credibility of the police officer. In his argument on the motion for a new trial, defense counsel stated that he wanted the officer to testify as to the condition of one, or another, of the houses between which defendant had fled. Presumably, this was designed to show where the shotgun pellets fired by the officers ended up. The trial court saw no connection with the guilt or innocence of the defendant on the charge of armed violence which could arise from this circumstance alone.

■■ It appears that, on appeal, defendant was asking the court to adopt a different theory of admissibility of such evidence than the one which was tendered and argued at trial. This being so, we must adhere to the rule that a party is not permitted to use one theory of admissibility at the trial and argue an entirely different theory on appeal. (*People v. Walker* (1st Dist. 1974), 22 Ill. App. 3d 711, 318 N.E.2d 111; *Johnson v. United States* (1943), 318 U.S. 189, 87 L. Ed. 704, 63 S. Ct. 549.) It is notable that none of the officers was cross-examined as to his knowledge of any pending investigation into his conduct at the time of the occurrence. The trial court emphasized that the issue was whether defendant in fact had a gun including a determination of whether defendant pointed a gun at officer Silich.

It appears from the record that defendant did not seek at the trial, nor during the hearing on his post-trial motion, to connect up the evidence he sought to introduce, through the use of Officer Widlowski, with the assertion now raised on appeal.

On the basis of the record before the court, therefore, we conclude that

the trial judge did not abuse his discretion in refusing to admit uncertain evidence with no apparent connection to the fact issue in this cause (*People v. York* (1963), 29 Ill. 2d 68, 193 N.E.2d 773; *People v. Townsel* (1st Dist. 1973), 14 Ill. App. 3d 105, 302 N.E.2d 213; *People v. Bruce* (5th Dist. 1975), 32 Ill. App. 3d 404, 336 N.E.2d 354).

Upon the basis of the record and for the reasons stated, therefore, the judgment of the Circuit Court of Will County and the sentence imposed therein are affirmed.

Affirmed.

STENGEL, P. J., and SCOTT, J., concur.