THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff and Respondent-Appellee, *v.* JOHN LEE, Defendant.—(PAUL M. BRAYMAN, Petitioner-Appellant.)

Fourth District   No. 16649

Opinion filed September 4, 1981.—Rehearing denied October 2, 1981.

Shelley A. Bannister, Barry A. Spevack, and Gerald A. Block, all of Bannister, Block & Spevack, and Paul M. Braymam, of Chicago, for appellant.

C. David Vogel, State's Attorney, of Pontiac (Donald D. Bernardi, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE LONDRIGAN delivered the opinion of the court:

Petitioner, counsel for defendant, John Lee, in the criminal trial below, appeals, claiming he is entitled to an award of attorney's fees for

legal services to defendant. Petitioner is one of several attorneys who entered an appearance on behalf of defendant. Though he filed motions in the trial court to be appointed as attorney for defendant, the trial court consistently denied the appointment on the basis that defendant did not have the right to force the court to appoint counsel of defendant's choosing. Since petitioner was never appointed as counsel for defendant, the trial court refused to award attorney's fees.

On March 5, 1979, defendant, John Lee, was charged by indictment with two counts of aggravated battery, one count of mob action, and three counts of armed violence. On March 12, 1979, he was arraigned and was asked if he wanted counsel appointed for him. Defendant Lee declined counsel at that time.

On April 4, 1979, an attorney named Deutsch appeared on behalf of codefendant Lamont Richards. He represented to the trial court that he and an attorney, Shelley Bannister, represented the "Pontiac Brothers Legal Defense" and were willing to work with and advise defendants before attorneys of their own choosing could be found. Though Deutsch represented that the attorneys' involvement would be limited, the trial court informed him that if counsel entered their appearance they would be construed as general appearances.

On April 5, 1979, Shelley Bannister filed her appearance on behalf of defendant, John Lee. During the hearing she represented to the court that defendant was making an attempt to obtain a trial attorney.

On August 28, 1979, after the cause had been transferred to McLean County from Livingston County, another attorney, Val Klink, entered his appearance for defendant Lee. On October 24, 1979, Bannister appeared on a motion for a continuance and advised the court that Klink was ill and could not appear or proceed any further with the defense of Lee. Klink died that same day.

Bannister represented that she wished to withdraw from the case because defendant Lee did not want her to represent him. The court refused to allow her to withdraw without affording Lee the opportunity to find other counsel. Bannister then represented to the court that Lee was looking for another attorney and Klink's office was assisting him in finding substitute counsel. During the course of the same hearing, defendant Lee addressed the court, stating that he knew he needed counsel and would like more time to find an attorney for himself. The trial court then continued the matter to allow Lee the opportunity to find substitute counsel.

On November 26, 1979, Bannister filed a written motion to withdraw, claiming that on July 13, 1979, defendant Lee requested counsel of his choice by means of a motion which was denied by the trial court.

Bannister's motion also stated that Klink was dead and that defendant Lee was in the process of selecting new counsel.

A docket entry for July 13, 1979, indicates that there was an oral motion for appointment of counsel of choice for defendant Lee which was denied. There is no hearing transcript of the July 13 proceedings contained in the record.

Bannister's motion to withdraw was presented to the trial court by an attorney for the codefendant. The trial court refused to allow Bannister to withdraw at that time because she failed to attend the hearing. Defendant Lee represented to the court that he had spoken with another attorney by the name of Toole about the possibility of representation. Toole had not made any definite commitment at that time to represent defendant, however.

The trial court then addressed the following remarks to defendant:

"I understand you can't hire a lawyer and I told you previously if you want the court to appoint counsel, but I'm not going to appoint counsel of your own choosing. If the court appoints counsel, I'll appoint counsel that is the choice that I presented to you previously and we discussed previously and the same situation pertains now, if you don't have funds to hire a lawyer, the court will engage counsel to represent you in this particular matter, but I'm not going to select a counsel that you choose, that would be a selection the court would make. * * * But I still would indicate to you there is no question about it, the court will appoint counsel to represent you if you wish to appoint counsel, but that counsel will be counsel that the court will select."

To that statement the defendant responded, "I don't want the court to appoint me an attorney."

On December 19, 1979, petitioner, Paul Brayman, filed his appearance on behalf of defendant Lee. Bannister was then allowed to withdraw as counsel of record for Lee.

On February 11, 1980, Brayman filed a motion requesting appointment of counsel of choice on behalf of defendant Lee. A docket entry indicates that the motion was denied. There is no hearing transcript of arguments on the motion contained in the record.

On March 4, 1980, counsel for the codefendant filed a motion for reconsideration of the request for appointment of counsel of choice. The trial court allowed Brayman to orally join in this motion. The trial court again denied the request for appointment of counsel, stating that he would appoint an attorney if defendant desired one but that the choice would be the court's and not the defendant's.

The trial began on March 13, 1980, and concluded on March 19, 1980.

Brayman represented defendant Lee throughout the trial. Defendant was found not guilty on all counts.

On April 16, 1980, Brayman filed affidavits for payment of fees to Bannister whom he had hired as an investigator pursuant to an appropriation granted by the legislature to defendants in the Pontiac disturbance. He also filed an affidavit asking for reimbursement for his expenses involved in the litigation. In addition, Brayman filed a third petition for attorney's fees. On August 19, 1980, the trial court entered separate written orders granting the request for expenses for Bannister and for Brayman. In a separate order, he again denied Brayman's request for attorney's fees on the basis that since Brayman had not been appointed by the court, he was not entitled to be paid by the State of Illinois for his services to the defendant.

The statutory provisions relevant to appointment of counsel for indigent defendants are found in section 4 of "An Act in relation to the office of Public Defender" (Public Defender Act) (Ill. Rev. Stat. 1979, ch. 34, par. 5604) and section 113—3(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 113—3(b)). The Public Defender Act provides in part:

> "Every court shall, with the consent of the defendant and where the court finds that the rights of the defendant would be prejudiced by the appointment of the public defender, appoint counsel other than the public defender, except as otherwise provided in Section 113—3 of the 'Code of Criminal Procedure of 1963.' " (Ill. Rev. Stat. 1979, ch. 34, par. 5604.)

The Code of Criminal Procedure of 1963 provides in part:

> "In all cases * * * if the court determines that the defendant is indigent and desires counsel, the Public Defender shall be appointed as counsel. * * * if the defendant requests counsel other than the Public Defender and the court finds that the rights of the defendant will be prejudiced by the appointment of the public defender, the court shall appoint as counsel a licensed attorney at law of this State." Ill. Rev. Stat. 1979, ch. 38, par. 113—3(b).

■■ At the outset, we note that the foregoing statutory authority imposes a duty upon a trial court to appoint counsel other than the public defender upon a showing that defendant is indigent and that the rights of the defendant would be prejudiced by the appointment of the public defender. This is not a matter of discretion with the trial court. Nevertheless, we conclude that petitioner lacks standing to assert a right to recovery of attorney's fees.

■■ To establish standing, an individual must allege that the interest for which he seeks protection is arguably within the zone of interest sought to be protected by statutory or constitutional guarantees in question and that

some substantial injury in fact results from the challenged action. (*West Side Organization Health Services Corp. v. Thompson* (1979), 73 Ill. App. 3d 179, 391 N.E.2d 392, *reversed on other grounds* (1980), 79 Ill. 2d 503, 404 N.E.2d 208.) Petitioner's contention that his potential economic interest can be engrafted upon a defendant's personal sixth amendment rights to counsel must be rejected.

■■■ While it is beyond peradventure that the sixth amendment grants an accused an absolute and unqualified right to have the assistance of counsel for his defense (*Gideon v. Wainwright* (1963), 372 U.S. 335, 9 L. Ed. 2d 799, 85 S. Ct. 792), an accused does not have an absolute and unqualified right to particular counsel (*People v. Cox* (1961), 22 Ill. 2d 534, 177 N.E.2d 211), and an attorney does not have either a constitutional or a statutory right to a particular appointment in a criminal case. Since petitioner has no protected right to appointment as counsel, *a fortiori* he has suffered no injury when the court fails to appoint him even if he can demonstrate that it was error for the court not to appoint counsel for the accused.

■■ We also conclude that the trial court did not err in not appointing counsel in this case. On at least two separate occasions the trial court personally addressed the defendant and asked him if he wanted the court to appoint counsel for him. Each time the defendant refused the appointment of counsel of the court's choice. While the court recognized its duty to appoint counsel, it was under no obligation to force unwanted counsel upon the defendant.

A similar situation arose in *Morris v. State* (1971), 249 Ark. 1005, 462 S.W.2d 842. In *Morris*, defendant alleged that the trial court erred in denying defendant's motion to pay attorney's fees, refusing to permit his attorney to withdraw as counsel, and in refusing his motion to discharge counsel. The record showed that prior to the robbery for which defendant was convicted, he had been arrested and charged with spitting on the sidewalk. Counsel in the robbery conviction had been furnished to petitioner in the prior proceeding by a "Committee for Peaceful Coexistence" headed by a local minister.

A codefendant testified that before he and the defendant were placed in jail, a law student working in counsel's office talked to them about allowing a member of counsel's firm to represent them. Defendants agreed. The defendant then filed a motion to proceed *in forma pauperis* and for payment of counsel's fee. The trial court explained that payment of fees by the State was not allowed when the defendant retained or selected counsel, and if defense counsel wished to withdraw, the court would appoint competent counsel for defendant at the expense of the State. Counsel refused to withdraw, and the trial court denied the application for fees. The Supreme Court of Arkansas concluded that there was

no error in the trial court's refusal to pay counsel selected or retained by the defendant upon an *in forma pauperis* petition absent appointment by the court.

■■ We agree with the conclusion of the Supreme Court of Arkansas. Though the trial court has a duty to appoint counsel in the proper situation, the trial court has a degree of discretion in determining which attorney should be appointed. Were it otherwise, an attorney could gain the consent of a defendant and ultimately force the trial court to appoint him if appointment of the public defender was inappropriate. Acceptance of petitioner's argument would divest the court of any degree of discretion it might have in the appointment of counsel who has appeared voluntarily on behalf of a defendant who is indigent and would qualify for the appointment of counsel.

■■ We also conclude that petitioner's argument that defendant's sixth amendment rights were violated when the trial court failed to appoint petitioner as counsel for defendant is without merit. Petitioner has not shown that any sixth amendment rights of the defendant were violated. In the first instance, defendant was acquitted. In the second instance, defendant was represented by counsel of his choice, notwithstanding that petitioner had not been appointed. See *People v. Potts* (1974), 17 Ill. App. 3d 867, 309 N.E.2d 35.

■■ Since petitioner does not have standing to assert an alleged violation of a defendant's personal sixth amendment rights, has not demonstrated that any of defendant's sixth amendment rights were violated, and was not appointed by the court to represent defendant, the order of the trial court denying petitioner's request for attorney's fees was proper and is affirmed.

Affirmed.

GREEN and WEBBER, JJ., concur.